UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CGY GREENWICH I LLC, | : |
| Plaintiff, | : |
| - against - | : Civil Action No: 16-cv-4637(DCF) |
| NOBLE AMERICAS GAS & POWER CORP., | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF NOBLE AMERICAS GAS & POWER CORP.'S MOTION TO AMEND ITS ANSWER AND TO ASSERT COUNTERCLAIMS AGAINST PLAINTIFF CGY GREENWICH I LLC**

Defendant, Noble Americas Gas & Power Corporation ("Noble"), submits this memorandum of law in support of its motion, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, for leave to amend its answer and to assert counterclaims against Plaintiff, CGY Greenwich I LLC ("CGY"), for (1) breach of CGY's obligation to negotiate in good faith arising from a preliminary agreement, and (2) promissory estoppel (collectively, the "Proposed Counterclaims"). Noble's proposed amended answer and counterclaims is attached to the motion as Exhibit A.

As Noble has recently removed this action from the Supreme Court, State of New York, the Proposed Counterclaims, which are permissive under New York law, are now compulsory under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 13(a). Noble therefore seeks to amend its pleading to assert the compulsory Proposed Counterclaims against CGY. Noble brings this motion because CGY has refused to consent to Noble's amending its answer and asserting counterclaims.

Noble is seeking to amend its answer and to assert the Proposed Counterclaims promptly and in good faith, and CGY would not be unduly prejudiced by allowing Noble to amend its answer and assert the Proposed Counterclaims.

**Procedural History**

On December 31, 2015, CGY initiated a civil action in the Supreme Court of the State of New York, County of New York, seeking a declaratory judgment that there was no enforceable agreement regarding Noble's purchase of New Jersey Solar Renewable Energy Certificates ("SRECs") from CGY (the "Complaint"). (Compl.[1] ¶ 1.) Noble timely answered the Complaint on April 21, 2016.

Between May 4, 2016 and June 14, 2016, Noble sought to identify the state(s) of citizenship of CGY's members to determine if there were grounds, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, to remove CGY's state court action to this Court on the basis of diversity jurisdiction.

Upon learning that there was complete diversity of parties and therefore this Court had subject matter jurisdiction, Noble promptly removed the action to this Court on June 19, 2016. (Dkt. No. 1.)

On July 1, 2016, Noble advised CGY that it planned to amend its answer and assert counterclaims in this action. (Liston Decl., Ex. 1.)

On July 6, 2016, CGY refused to consent, (Liston Decl., Ex. 2), thereby necessitating this motion.

On July 11, 2016, pursuant to 28 U.S.C. 636(c), and with the consent of all parties, this case was referred to Your Honor to conduct all proceedings.

---

[1] The Complaint is attached as Exhibit A to Noble's Notice of Removal (Dkt. No. 1.)

## Statement of Facts[2]

This action arises from CGY's attempt to renege on an agreement between two established players in the purchase and sale of energy commodity transactions. In October 2015, CGY entered into a preliminary agreement with Noble for Noble to purchase SRECs from CGY (the "Transaction"). (Ex A[3], ¶¶ 19-22.) The preliminary agreement included the essential terms of the parties' transaction and was documented by a confirmation notice from Karbone, Inc. ("Karbone"), an independent, third-party commodities broker (the "Transaction Confirmation"). (Ex. A, ¶ 23.)

When the market price for SRECs increased, instead of honoring their agreement to negotiate in good faith, CGY sought to back out of the deal unless Noble agreed to change the price terms, which were already agreed upon. When that effort was unsuccessful, CGY ceased negotiating with Noble and raised pretextual reasons for refusing to move forward with the Transaction. (Ex. A, ¶¶ 30-36.)

In reliance on CGY's promises and the confirmation notice, Noble refrained from entering into other agreements for the purchase of SRECs, thereby missing opportunities to purchase SRECs during favorable market conditions for such purchases. As a result, Noble suffered damages substantially in excess of $1 million. (Ex. A, ¶¶ 36, 48). Noble also entered into additional transactions to serve as a market-appropriate hedge of Noble's purchase of SRECs from CGY. These additional transactions resulted in Noble suffering financial loss. (Ex. A, ¶¶ 27, 47.)

---

2 A full recitation of the facts is set forth in the Proposed Counterclaims. (Ex. A.)
3 Paragraph references are to the Counterclaims in the proposed amended pleading. (Ex. A.)

**Legal Argument**

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Since CGY has refused Noble's request, Noble now requests the Court's leave to do so.

A motion to amend should be granted unless "there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001) (*citing Foman v. Davis,* 371 U.S. 178, 182 (1962)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105, 107 (S.D.N.Y. 2003) ("Due to the liberal rules governing the amendments of pleadings and the forgoing reasons, Defendant's motion to amend its Answer and Counterclaim is granted.").

CGY cannot show any prejudice – let alone the requisite significant prejudice that might result if Noble's reasonable and timely application is granted. Accordingly, Noble's request for leave to amend the answer and assert counterclaims against CGY should be allowed in all respects, as discussed in detail below.

**1. Noble Has Acted Promptly and in Good Faith in Making This Motion**

Noble has acted in good faith in seeking to amend its pleading to assert the Proposed Counterclaims promptly after this action was removed to this Court.

In state court, although the Proposed Counterclaims are related to CGY's claim for a declaratory judgment, Noble had the discretion to assert them as a separate proceeding or as a counterclaim because "[a]ll counterclaims are permissive in New York." Siegel, N.Y. Prac. § 224 (5th ed.).

In Federal practice, however, the Proposed Counterclaims are compulsory because they "arise[] out of a transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1).

As Noble seeks to assert its rights against CGY with respect to the Proposed Counterclaims, it is therefore appropriate at this time to amend its pleading and assert the Proposed Counterclaims as part of this action.

### 2. The Proposed Counterclaims Will Not Prejudice CGY

Leave to serve the amended answer and counterclaims should be granted because the Proposed Counterclaims do not in any way prejudice CGY. CGY has sought a declaratory judgment seeking a determination that there is no enforceable agreement between it and Noble for CGY to sell SRECs to Noble. The Proposed Counterclaims arise from CGY's conduct in connection with the same transaction.

In determining what constitutes "prejudice," courts in the Second Circuit generally consider whether the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

This case is in its earliest stage. Discovery has not yet begun, and the Court has not yet held an initial conference. Further, since CGY's claim for a declaratory judgment and Noble's proposed counterclaims relate to the conduct between the parties in connection with the same transaction, there will be substantial overlap in discovery.

Lastly, Noble's Proposed Counterclaims are interrelated to CGY's claim and will not prevent a party from bringing a timely action in another jurisdiction.

### 3. Noble's Proposed Counterclaims Are Well-Pled and Not Futile.

Noble's proposed amendment is meritorious and, hence, CGY cannot establish futility. "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile." *Yves Saint Laurent Parfums, S.A. v. Costco Wholesaler Corp.*, No. 07 CIV. 3214LBS HBP, 2010 WL 2593671, at *2 (S.D.N.Y. June 24, 2010). As an initial matter, a motion to amend is not the time for a full-blown examination of the action's merits; the Court need only decide whether there is a set of facts possible under which the movant might possibly prevail on the proposed amendment. *Id*. ("in assessing the claimed futility of a proposed amended pleading, the court must assume the truth of the factual allegations set forth in the proposed amended pleading"); *see also Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105, 107 (S.D.N.Y.2003) ("Due to the liberal rules governing the amendments of pleadings and the forgoing reasons, Defendant's motion to amend its Answer and Counterclaim is granted.").

In the Proposed Counterclaims, Noble seeks to assert valid causes of action against CGY for 1) breach of its obligation to negotiate in good faith as a result of the preliminary agreement, and 2) promissory estoppel.

<u>Noble Has Stated a Claim for CGY's Breach of Its Obligation to Negotiate in Good Faith Arising from the Parties' Preliminary Agreement</u>

Noble has properly pled that CGY and Noble entered into a preliminary agreement regarding the essential terms of the Transaction, "binding the parties to negotiate in good faith" over the remaining terms necessary to complete the agreement. *Brown v. Cara*, 420 F.3d 148, 159 (2d Cir. 2005). Specifically, the parties entered into a preliminary agreement for Noble to purchase SRECs from CGY, which was confirmed by the Transaction Confirmation. (Ex. A, ¶¶ 21-23.)

After the Transaction Confirmation, the parties did in fact begin negotiations, and exchanged draft agreements. (Ex. A, ¶¶ 30.) In addition, consistent with industry practice, after the Transaction Confirmation, Noble entered into related transactions to serve as a market-appropriate hedge. (Ex. A, ¶¶ 38-29.)

Based on these allegations, Noble has sufficiently pled that the parties entered into a preliminary agreement. *See e.g. Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, No. 14 CIV. 7343 ER, 2015 WL 5671724, at *16 (S.D.N.Y. Sept. 22, 2015) (Party properly alleged the existence of a preliminary agreement resulting from a memorandum of understanding that was to be followed up with a final agreement).

Noble has also adequately alleged that CGY breached its obligation to negotiate in good faith to finalize the transaction. When the market price for SRECs increased, CGY attempted to renegotiate the price that it had already agreed to and which was documented in the Transaction Confirmation. (Ex. A, ¶ 31.) When Noble was unwilling to renegotiate, CGY reneged on the Transaction by suddenly and pretextually raising concerns about Noble's credit, but affording Noble no opportunity to address or resolve such purported concerns. (Ex. A, ¶¶ 32-34); *Teachers Ins. & Annuity Ass'n of Am. v. Ormesa Geothermal*, 791 F. Supp. 401, 415 (S.D.N.Y. 1991) ("Party breached its duty to negotiate in good faith by when it "attempted to change and undercut terms that had been agreed to" in the preliminary agreement). CGY – without a legitimate basis for doing so – ceased negotiations with Noble, despite Noble's willingness to fully guarantee its obligations to address any of CGY's purported concerns. (Ex. A, ¶¶ 35-36); *FCOF UB Sec. LLC v. MorEquity, Inc.*, 663 F. Supp. 2d 224, 230 (S.D.N.Y. 2009) (party alleged sufficient facts to support claim premised on failure to continue negotiating after entering into binding preliminary agreement).

7

Noble Has Stated a Claim for Promissory Estoppel

"A claim for promissory estoppel requires [party] to show 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, No. 14 CIV. 7343 ER, 2015 WL 5671724, at *19 (S.D.N.Y. Sept. 22, 2015) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.2000)).

Noble alleges that 1) CGY made a series of clear and unambiguous promises to Noble that they would sell New Jersey SRECs to Noble, (2) Noble reasonably relied on such promises by refraining from entering into agreement for the purchase of other SRECs and by entering into hedge transactions, and (3) as a result of that reliance, Noble was injured by missing out on a large gain from a changing market and by suffering a loss from the hedge transactions. (Ex. A, ¶¶ 45-49.) Noble has therefore adequately pled the elements of promissory estoppel. *Id*.

As the Proposed Counterclaims are both properly pled, they are not futile.

## Conclusion

For all of the reasons stated herein and in its moving papers, Noble respectfully requests the Court grant its motion to amend its answer and assert counterclaims as set forth in Exhibit A.

Dated: July 25, 2016.

                          Respectfully submitted,

                          **LEWIS BAACH PLLC**

                          By:   /s David G. Liston
                                David G. Liston
                                Alex G. Patchen
                                Ari J. Jaffess
                                The Chrysler Building
                                405 Lexington Avenue, 62nd Floor
                                New York, NY 10174
                                Tel: (212) 826-7001

                          *Attorneys for Defendant/Counterclaim Plaintiff*