EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CGY GREENWICH I LLC, | : |
| | : |
| Plaintiff/Counterclaim Defendant, | : |
| | : Civil Action No: 16-cv-4637 (DCF) |
| - against - | : |
| | : |
| | : |
| NOBLE AMERICAS GAS & POWER CORP., | : **JURY TRIAL DEMANDED** |
| | : |
| Defendant/Counterclaim Plaintiff. | : |
| | : |
| | : |

**NOBLE AMERICAS GAS & POWER CORP.'S
AMENDED ANSWER AND COUNTERCLAIMS**

Defendant Noble Americas Gas & Power Corporation ("Noble"), through its attorneys, submits this Amended Answer and Counterclaims, and would respectfully show as follows:

1. In response to paragraph 1 of the Complaint, Noble admits that Plaintiff CGY Greenwich I LLC ("CGY") filed suit against Noble to obtain a declaratory judgment pursuant to CPLR § 3001, but denies the absence of an enforceable agreement between Noble and CGY. As a result, CGY is not entitled to the relief sought.

2. Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Complaint, and on that basis denies the same.

3. Noble admits the allegations in paragraph 3 of the Complaint.

4. Noble admits the allegations in paragraph 4 of the Complaint.

5. Noble admits the allegations in paragraph 5 of the Complaint.

6. With respect to paragraph 6 of the Complaint, Noble admits that it regularly conducts business in New York and that the parties were introduced to one another by a broker

located in New York City. Noble denies the remainder of the allegations in paragraph 6 of the Complaint.

7. Noble admits the allegations in paragraph 7 of the Complaint.

8. Noble admits the allegations in paragraph 8 of the Complaint.

9. Noble is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Complaint, and on that basis denies the same.

10. Noble admits the allegations in paragraph 10 of the Complaint.

11. Noble admits the allegations in paragraph 11 of the Complaint.

12. Noble admits the allegations in paragraph 12 of the Complaint.

13. With respect to the allegations in paragraph 13 of the Complaint, Noble admits that Karbone issued a Confirmation Notice on October 21, 2015 (the "Karbone Notice"), a true and correct copy of which is attached as Exhibit "A" to the Complaint. Noble also admits that the Karbone Notice states that Karbone's sole function in the transaction is "the introduction of the parties." Noble denies that the Karbone Notice merely described "general terms" of a "proposed transaction" between the parties. Noble further denies the remaining allegations in paragraph 13.

14. With respect to the allegations in paragraph 14 of the Complaint, Noble admits that the parties did not sign the Karbone Notice although it was delivered to and received by CGY and Noble. Noble denies the remaining allegations in paragraph 14.

15. Noble denies the allegations in paragraph 15 of the Complaint.

16. Noble admits that paragraph 16 of the Complaint accurately quotes portions of the Karbone Notice, but denies the remaining allegations in paragraph 16.

17. Noble admits that the documents referenced in paragraph 17 of the Complaint were the subject of negotiations between the parties but denies the remaining allegations in paragraph 17.

18. With respect to the allegations in paragraph 18 of the Complaint, Noble admits that the quoted language was communicated by CGY to Noble on or about December 11, 2015. Noble further admits that multiple drafts of the PSA Agreements were exchanged between the parties in the process of negotiating the documents. Noble denies the remaining allegations in paragraph 18, including the allegation that "numerous material terms were never agreed upon."

19. With respect to the allegations in paragraph 19 of the Complaint, while the essential terms were agreed to by the parties, Noble admits that the PSA Agreement was not fully executed.

20. With respect to the allegations in paragraph 20 of the Complaint, Noble admits that reports were published concerning Noble Group's credit rating. Noble denies the remaining allegations in paragraph 20, including CGY's characterization of the reports, particularly in light of the fact that information concerning Noble Group's credit ratings had previously been communicated to CGY.

21. With respect to the allegations in paragraph 21 of the Complaint, Noble admits that S&P announced that its credit rating for Noble Group was on review, but denies the remaining allegations in paragraph 21.

22. With respect to the allegations in paragraph 22 of the Complaint, Noble admits that Moody's downgraded Noble Group's credit rating but denies the remaining allegations in paragraph 22.

23. Noble denies the allegations in paragraph 23 of the Complaint, including any inference that CGY met its obligation to negotiate the documentation in good faith, which is denied.

24. Noble denies the allegations in paragraph 24 of the Complaint.

25. With respect to paragraph 25 of the Complaint, Noble admits that it sent a letter on December 23, 2015 demanding that CGY perform its obligations pursuant to the terms of the parties' preliminary agreement as reflected in the Confirmation Notice, and that Noble sought written confirmation of CGY's intent to perform.

26. Noble admits that CGY accurately quotes to the language in CGY's December 28, 2015 response, but denies CGY's characterizations contained in said response. Noble denies the remainder of the allegations in paragraph 26 of the Complaint.

27. Noble admits the allegations in paragraph 27 of the Complaint.

28. In response to the allegations contained in paragraph 28 of the Complaint, Noble repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

29. Noble admits the allegations in paragraph 29 of the Complaint.

30. With respect to paragraph 30 of the Complaint, Noble denies that CGY is entitled to any of the relief sought in the Complaint.

31. Noble admits the allegations in paragraph 31 of the Complaint.

32. Noble admits the allegations in paragraph 32 of the Complaint.

33. Noble admits the allegations in paragraph 33 of the Complaint.

34. With respect to the allegations in paragraph 34 of the Complaint, Noble denies that CGY is entitled to the requested relief.

## COUNTERCLAIMS

Counterclaim Plaintiff, Noble Gas & Americas Corp. ("Noble"), by and through its attorneys, as for its Counterclaims against Counterclaim Defendant, CGY Greenwich I LLC ("CGY"), alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from CGY's attempt to back out of an agreement between two established players in the purchase and sale of energy commodity transactions. After reaching a preliminary agreement with Noble on the essential terms of an energy commodity transaction, CGY failed to negotiate in good faith to reach an agreement on the remaining terms of the deal.

2. In October 2015, CGY entered into a preliminary agreement with Noble for Noble to purchase Solar Renewable Energy Certificates ("SRECs") from CGY. The preliminary agreement included the essential terms of the parties' transaction and was documented by a confirmation notice from Karbone, Inc. ("Karbone"), an independent, third-party commodities broker.

3. Shortly after Noble and CGY had agreed to the essential terms for CGY's sale of SRECs to Noble, including the purchase price to be paid by Noble, the market price for SRECs increased.

4. When the market price increased, CGY attempted to renegotiate the already agreed-upon price for the SRECs in an attempt to get Noble to pay a higher price. When that was unsuccessful, CGY, in bad faith, suddenly ceased negotiating with Noble, and raised pretextual reasons for refusing to move forward with the transaction.

5. In reliance on CGY's promises and the confirmation notice, Noble refrained from entering into other agreements for the purchase of SRECs, thereby missing opportunities to purchase SRECs during favorable market conditions for such purchases. As a result, Noble

suffered damages substantially in excess of $1 million. Noble also entered into additional transactions to serve as a market-appropriate hedge of Noble's purchase of SRECs from CGY. These additional transactions resulted in Noble suffering financial loss.

## THE PARTIES

6. Noble is a corporation organized under the laws of the state of Delaware with a principal place of business located at Four Stamford Plaza, 107 Elm Street, 7th Floor, Stamford, Connecticut 06902.

7. Upon information and belief, CGY is a limited liability company organized under the laws of the state of Delaware with a principal place of business located at 1200 Brickell Avenue, Suite 800, Miami, Florida 33131. CGY's sole member is Conergy Projects, Inc., which is a corporation organized under the laws of the state of California, with its principal place of business in Florida.

## JURISDICTION AND VENUE

8. There is diversity of citizenship between CGY, which is a citizen of California and Florida, and Noble, which is a citizen of Delaware and Connecticut.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the necessary and properly named parties and the amount in controversy exceeds $75,000.00.

10. This Court has personal jurisdiction over the parties because the parties conducted business in New York by engaging a New York City commodities broker for this disputed transaction.

11. Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

12. Pursuant to 28 U.S.C. §§ 1441 and 1446, Noble timely removed this action to this Court from the Supreme Court of the State of New York, County of New York.

13. The Court has supplemental jurisdiction over these Counterclaims, under 28 U.S.C. § 1367, as they are related to the claims asserted by the CGY for which this Court has subject matter jurisdiction.

**FACTS**

14. Certain states have Renewable Portfolio Standard ("RPS") legislation requirements for solar energy. RPS legislation requires that a certain percentage of retail sales of electricity include a minimum percentage of electrical energy generated from solar photovoltaics. Electric distribution companies and suppliers can satisfy RPS obligations by purchasing SRECs generated by other suppliers.

15. SRECs are tradable instruments that exist in states with RPS legislation requirements. Each SREC is treated as the equivalent of one megawatt-hour of retail electricity sales from solar photovoltaics.

16. Upon information and belief, CGY, its member, Conergy Projects, Inc. ("Conergy"), and/or one of its affiliates or related companies, develops and constructs solar projects.

17. Noble engages in energy and environmental commodity trading.

18. In or about October 2015, Noble was seeking to enter into transactions to purchase SRECs.

19. In or about October 2015, CGY was seeking to sell certain SRECS that would be generated at a solar facility to be constructed in Greenwich Township, Warren County, New Jersey.

20. CGY and Noble were introduced by Karbone, an independent, New-York based energy and environmental commodities broker that was acting on behalf of both parties.

21. On or about October 21, 2015, CGY and Noble reached a preliminary agreement for Noble to purchase New Jersey SRECs from CGY (the "Transaction").

22. The Transaction was confirmed by a Confirmation Notice issued by Karbone to both CGY and Noble on or about October 21, 2015 (the "Transaction Confirmation"). A true and correct copy of the Transaction Confirmation is attached hereto as Exhibit A.

23. The Transaction Confirmation sets forth the essential and agreed-upon terms of the Transaction. The Transaction Confirmation includes: 1) the price to be paid by Noble; 2) the volume to be provided by CGY; and 3) the delivery timeframe, which encompassed the years 2017-2021.

24. The Transaction Confirmation provides that the parties would follow-up by entering into a Purchase and Sale Agreement ("PSA"), which would set forth all of the terms of the Transaction.

25. The Transaction Confirmation was subject to the completion of a fully executed PSA and mutually acceptable credit terms.

26. Based on Noble's experience, and industry practice, the preliminary agreement reflected in the Transaction Confirmation confirmed not only the essential terms of the Transaction, but also the intent of CGY and Noble to negotiate in good faith a PSA and mutually acceptable credit terms.

27. Upon receiving the Transaction Confirmation, and in reliance thereon, between October 21, 2015 and December 8, 2015, Noble entered into related transactions to serve as a market-appropriate hedge of the Transaction (the "Hedge Transactions"). The Hedge

Transactions resulted in a loss to Noble of at least $100,000.  Noble would not have entered into the Hedge Transactions if it had not entered into the Transaction with CGY.

28.     The Hedge Transactions were consistent with industry practice and CGY would have, or should have, known that Noble would enter into such Hedge Transactions after receiving the Transaction Confirmation.

29.     Immediately after the Transaction Confirmation, Noble and CGY began negotiating the terms of the PSA and credit terms.  They exchanged drafts of the PSA and proposed credit terms that would be mutually acceptable to the parties.

30.     In the interim, the market price for SRECs was increasing and, as a result, CGY ultimately attempted to renegotiate the price that it had already agreed to and which was documented in the Transaction Confirmation.

31.     Noble was unwilling to renegotiate the agreed-upon price for the purchase of SRECs from CGY.

32.     As soon as Noble told CGY that it was unwilling to renegotiate the price, CGY began to look for a way to renege on the Transaction.

33.     Despite never having previously raised any concerns about Noble's credit, CGY suddenly, and pretextually, raised concerns about Noble's credit.

34.     In response to CGY's questions about Noble's credit, Noble was ready, willing, and able to fully guarantee its obligations under the Transaction.  In this regard, Noble could have used several techniques to eliminate any potential credit concerns raised by CGY.  For example, Noble could have provided liquid collateral (by using cash, a line of credit, or similar alternatives) or financial intermediation (by having an institution with unquestionable credit

purchase the SRECs and resell them to Noble).  Noble has undertaken similar arrangements when necessary with other counterparties to avoid any legitimate issue of potential credit risk.

35. CGY, however, refused to discuss its purported concerns about Noble's credit, and likewise refused to afford Noble any opportunity to address and resolve such alleged concerns.  Rather, CGY abruptly ceased negotiations with Noble, and on December 11, 2015, CGY sent a letter to Noble terminating the agreement, using CGY's purported concerns about Noble's credit as a pretextual basis for reneging on the Transaction.

36. As of December 11, 2015, Noble's unrealized gain on the Transaction was an amount substantially in excess of $1 million.

## AS FOR A FIRST CAUSE OF ACTION
### (Breach of Duty to Negotiate in Good Faith Under the Parties' Preliminary Agreement )

37. Noble repeats and realleges the allegations set forth in paragraphs 1 to 36 as if set forth at length herein.

38. The parties entered into a preliminary agreement when they fully agreed on the essential terms of the Transaction, which was confirmed by the Transaction Confirmation.

39. In the context of the negotiations, a confirmation notice, such as the Transaction Confirmation, is the customary form to enter into an agreement for SRECs, which is superseded in due course with a more detailed agreement, such as a PSA, which would be consistent with the terms of the of the confirmation notice.

40. Thus, Noble and CGY entered into an enforceable preliminary agreement that obligated them to negotiate in good faith to enter into a PSA and reach an agreement as to the credit terms for Noble to purchase New Jersey SRECs from CGY.

41. CGY's refusal to move forward was in bad faith and was based on pretextual reasons.

42. As a result of CGY's actions, Noble has suffered damages exceeding $1 million.

## AS FOR A SECOND CAUSE OF ACTION
### (Promissory Estoppel)

43. Noble repeats and realleges the allegations set forth in paragraphs 1 to 42 as if set forth at length herein.

44. As alleged above, CGY made a series of clear and unambiguous promises to sell New Jersey SRECs to Noble.

45. CGY has not complied with its promises and has refused to sell the New Jersey SRECs to Noble.

46. In reasonable reliance on such promises, and to its detriment, Noble refrained from entering into agreements for the purchase of other SRECs and, as a result, lost out on other opportunities to purchase SRECs during favorable market conditions for such purchases. Noble's unrealized gain on the Transaction when CGY refused to move forward was an amount substantially in excess of $1 million.

47. In addition, as alleged above, in reasonable reliance on CGY's promises, Noble entered into the Hedge Transactions, which resulted in a loss in excess of $100,000.

48. Noble reasonably relied on CGY's promises and as a result it has suffered damages substantially exceeding $1 million.

## DEMAND FOR JURY TRIAL

Noble requests trial by jury on all issues so triable.

WHEREFORE, Noble demands entry of judgment in its favor against CGY based on its Counterclaims as follows:

A. On the claim for CGY's breach of the duty to negotiate in good faith under the parties' preliminary agreement in an amount to be determined at trial;

B. On the claim for promissory estoppel in an amount to be determined at trial;

C. Pre-judgment and post-judgment interest;

D. Noble's costs, expenses and attorneys' fees; and

E. Such other and further relief as the Court may deem just and proper.

Dated: July __, 2016.

        Respectfully submitted,

        **LEWIS BAACH PLLC**

        By: ___/DRAFT_____
        David G. Liston
        Alex G. Patchen
        Ari J. Jaffess
        The Chrysler Building
        405 Lexington Avenue, 62nd Floor
        New York, NY 10174
        Tel: (212) 826-7001

        *Attorneys for Defendant/Counterclaim Plaintiff*